UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                          :
O'NEAL WOODS,                             :
                          Plaintiff,      :
                                          :
          -v-                             :
                                          :          14-CV-9057 (JPO)
THE DISTRICT COUNCIL FOR NEW YORK         :
CITY AND VICINITY OF THE UNITED           :          OPINION AND ORDER
BROTHERHOOD OF CARPENTERS AND             :
JOINERS OF AMERICA,                       :
                          Defendant.      :
                                          :
------------------------------------------------------------ X

J. PAUL OETKEN, District Judge:

 Plaintiff O'Neal Woods brings this action against Defendant the District Council for New

York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America ("DC"),

alleging violations of Sections 101(a)(5), 102, and 609 of the Labor-Management Reporting and

Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. §§ 411(a)(5), 412, 529; Section 301 of the Labor

Management Relations Act ("LMRA"), 29 U.S.C. § 185; Section 8(a)(4) of the National Labor

Relations Act ("NLRA"), 29 U.S.C. § 158(a)(4); and his contract with DC.  DC moves to

dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6).  For the reasons that

follow, DC's motion is granted.

**I.     Background**

 On December 5, 2011, Woods, then a member of DC, was criminally charged in New

York state court with assault in the first and second degrees. (Dkt. No. 1, Complaint ¶¶ 36–37.)[1]

Because the assault charges arose from an incident that took place while Woods was on the

job—one of his DC Brothers alleged that Woods "stabbed, cut, and physically battered" him—

---

[1] All record citations are to the Complaint unless specified otherwise.

Woods also received a notice of internal union disciplinary charges. (¶¶ 38–39 (alterations omitted).) He pleaded not guilty to the criminal charges and to the union's allegations.

DC, pursuant to its constitution, convened a Trial Committee and scheduled a hearing on the disciplinary charges. The hearing took place on April 12, 2012, while the criminal charges were still pending. Accordingly, Woods's counsel (also his counsel here), requested that the hearing be postponed so that Woods could attend the hearing without prejudicing himself in the criminal proceeding. (¶¶ 42–43.) The head of the Trial Committee, Chairman Mack, denied that request. (¶¶ 46–47.) Mack held that Woods had no right to be free from self-incrimination in the disciplinary proceeding and that if he attended he would be called to testify. (*Id.*) Woods's counsel argued that his client was forced into a dilemma. Either he could forfeit his rights as a union member or he could forfeit his rights as a criminal defendant. Counsel vigorously objected to his client being forced into this dilemma and urged Mack to postpone the hearing. Nonetheless, Mack proceeded with the hearing. Woods was found guilty by a jury of union members, expelled from the union, and fined $50,000. (¶¶ 50–51.)

Woods availed himself of the appeals process of the United Brotherhood of Carpenters ("UBC"), DC's parent union. On appeal, DC conceded that "[Mack's] statement that Brother Woods had no right to invoke his privilege against self-incrimination before the Trial Committee[] was incorrect." (¶ 76 (alterations omitted).) Despite this concession, DC's appellate tribunal affirmed Woods's discipline. Meanwhile, Woods's criminal prosecution continued. He testified at the criminal trial that he acted in self-defense. The jury acquitted him of all charges. (¶¶ 83–84.)

In July 2013, Woods was working a job at Pinnacle Industries II ("Pinnacle"). (¶ 88.) He claims that, in August 2013, he was told that he could not work at Pinnacle because he had been expelled from DC and because he owed DC $50,000. (¶ 89.) He did not go to work the day after

2

he heard this. (¶ 90.) When he did return to work, he was told that he could not work until he showed his union card. (¶ 91.) The same day, Woods filed an unfair labor practice charge with the National Labor Relations Board ("NLRB"). DC and Woods settled this charge, with DC agreeing to pay Woods back pay, to notify Pinnacle that it did not object to Woods's employment, and to request that Pinnacle remove any references to Woods's discharge from their records.

In May and June 2014, DC referred Woods to two jobs at Tutor Perini Building Corporation ("Tutor"). (¶¶ 102, 110.)[2] At both of these jobs, he was told by various people that there were problems with his union membership and that he could not work. (*See generally* ¶¶ 102–25.) As a result of these incidents, Woods filed two more charges with the NLRB. The Complaint does not say what became of these charges.

## II.    Discussion

DC moves to dismiss the Complaint on the grounds that (1) Woods fails to plead an actionable violation of Section 101 of the LMRDA; (2) Woods fails even to allege that DC retaliated against him in violation of Section 609 of the LMRDA; (3) Woods has failed to exhaust his internal union remedies; (4) Woods's claims regarding unfair labor practices are within the exclusive competence of the NLRB; and (5) Woods's state-law claims are completely preempted by federal law.

### A.    Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible if the well-pleaded factual allegations

---

[2] The Complaint does not explain how Woods was referred to these jobs despite having been expelled from DC.

3

of the complaint, presumed true, permit the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). Moreover, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

## B.    Due Process

Woods alleges that his misconduct hearing violated his "due process" rights under Section 101 of the LMRDA, Section 301 of the LMRA, and his contractual rights secured by the union constitution under New York state law.

### 1.    Section 101

Section 101[3] of the LMRDA forbids a labor organization from disciplining one of its members without providing the member a "full and fair hearing." *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 385 (2d Cir. 2001) ["*IBT*"] (quoting *Kuebler v. Cleveland Lithographers & Photoengravers Union Local 24-P*, 473 F.2d 359, 363–64 (6th Cir. 1973)). "Not all of the due process protections available in the federal courts apply to union disciplinary proceedings." *Id.* Instead, only the "basic principles of due process" apply. *Id.* Accordingly, "the LMRDA protects only against a breach of fundamental fairness." *Id.* (internal quotation marks omitted) (quoting *Wildberger v. Am. Fed'n of Gov't Employees AFL-CIO*, 86 F.3d 1188, 1193 (D.C. Cir. 1996)).

---

[3] Woods asserts a second cause of action under Section 102. Section 102 provides a private right of action for union members whose rights under Section 101 have been violated. *Finnegan v. Leu*, 456 U.S. 431, 439 n.10 (1982). Woods's Section 102 claim is dismissed because he has failed to plead a violation of Section 101.

4

The Second Circuit, in *IBT*, addressed and rejected the same arguments that Woods presses here. In that case, a union member alleged that he had been denied a full and fair hearing—in violation of Section 101 and his union's constitution—because the union had failed to adjourn his trial on account of his pending criminal investigation. The Second Circuit held that it was "consistent with [its] caselaw" to hold that "[b]ecause the Fifth Amendment is unavailable to a union member called to sworn examination before an internal disciplinary body, this Court finds that it does not support [the union members'] request to stay the [hearing]." *Id.* at 388 (internal quotation marks omitted).

This holding would appear squarely to foreclose Woods's claims here. Nonetheless, Woods offers two reasons why the rule in *IBT* does not apply to his case. First, he contends that, unlike the union members in *IBT*, he had an "absolute right" under the UBC constitution to attend his union trial, which right was violated when he was forced to choose between it and "his Fifth Amendment rights against self-incrimination." (Plaintiff's Memorandum, at 14–15.) But even if it were true that Woods's right to attend his trial was violated when he was forced to choose between not attending the trial and forfeiting the "Fifth Amendment right" that the Second Circuit has specifically held *does not apply* to the proceeding, Woods's argument would still be unavailing. "A violation of a procedural provision of a union's constitution is actionable only if the violation deprived the party of a full and fair hearing under the LMRDA." *IBT*, 247 F.3d at 387. Woods does not allege any facts sufficient to give rise to the inference that his trial was fundamentally unfair; indeed, he has not pleaded any problems with the trial other than his failure to get the stay he requested and Mack's insistence that he would be made to testify if he attended.

Second, Woods contends that "[c]ontrary to the factors applicable in the *Teamsters* case, Plaintiff was not being 'called to [a] sworn examination before an internal disciplinary body,'

5

where such member could be compelled to give testify [*sic*]." (Plaintiff's Memorandum, at 16.) Although this may be true—indeed, Woods was *not* forced to testify—its relevance is unclear. This case is on all fours with *IBT*.

Undeterred, Woods argues that DC is bound by its incorrect statement before the UBC Appeals Committee that the Fifth Amendment to the United States Constitution protected his right not to testify before the Trial Committee. This argument is unmeritorious. The Court is not bound by a party's incorrect statement of the law. *E.g.*, *N.Y. State Nat. Org. for Women v. Terry*, 159 F.3d 86, 97 n.7 (2d Cir. 1998). Woods's Section 101 claim is dismissed.[4]

### 2.    Section 301

Next, Woods alleges that the same denial of due process violated Section 301 of the LMRA, which provides a cause of action for violation of a union's constitution. *United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada, AFL CIO v. Local 334*, 452 U.S. 615, 619–22 (1981). DC argues that this claim should be dismissed because (1) Woods fails to allege a violation of the UBC constitution and (2) Woods has failed to exhaust his remedies within the UBC process. Because the Court finds that Woods failed to exhaust his internal remedies, the Court need not address whether DC violated the UBC constitution.

"An employee seeking a remedy for an alleged breach of [a union constitution] must attempt to exhaust any exclusive grievance and arbitration procedures established by that agreement before he may maintain a suit against his union or employer under § 301(a) of the [LMRA]." *Clayton v. Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am.*, 451 U.S. 679, 681 (1981). Woods argues that exhaustion is not appropriate or required here. He also baldly pleads that he "exhausted his internal remedies" (¶ 129), although DC

---

[4] DC also argues that Woods's Section 101 claim should be dismissed because he failed to exhaust his remedies within the union. The Court need to reach this question because Woods's Section 101 claim has no merit.

6

contends—and Woods concedes—that he failed to take the final step of appealing to the general executive board of UBC as required by the UBC constitution. (Defendant's Memorandum, at 18.)

The first question, then, is whether Woods was required to exhaust his internal appeals in this case. "Under both the LMRA and the LMRDA, the requirement that a plaintiff exhaust internal union remedies lies within the court's discretion." *Maddalone v. Local 17, United Bhd. of Carpenters & Joiners of Am.*, 152 F.3d 178, 186 (2d Cir. 1998). Three factors guide the exercise of that discretion: "first, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks . . . ; and third, whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim." *Clayton*, 451 U.S. at 689. All three factors point in favor of exhaustion here. First, there is no reason to believe that UBC—a very large national union headquartered in Washington, DC—would be hostile to Woods's claims. *See Maddalone*, 152 F.3d at 187. Second, although Woods contends that punitive damages would be unavailable in his union appeal, it is clear that all he was requesting was a retrial and a stay of the proceedings pending the outcome of his criminal trial. UBC could have offered him that. And this is Woods's only allegation plausibly implicating Section 301. Finally, as the discussion of UBC's appeals procedures below will demonstrate, there is no reason to believe that further appeal would have resulted in any appreciable delay.

The UBC constitution allows a party who has suffered an adverse determination by an appellate committee to appeal that determination to the General Executive Board or General

7

Convention.[5] Woods does not contend that he appealed to the General Executive Board or the General Convention. Instead, he writes as follows:

> [U]nion members [must] exhaust reasonable hearing procedures "provided that a four month lapse of time has not been exceeded in exhausting the procedures." Plaintiff's . . . claim ripened on or about on April 12, 2012 when he was denied due process at his internal disciplinary trial, and that the penalty that stemmed from that trial was converted to an Order and Judgment, dated April 15, 2012, and that his appeal to the International Union, dated June 15, 2012, was denied in the International Union's decision, dated October 15, 2012. At that point, Plaintiff had exhausted, from April 12, 2012 to October 15, 2012 at his internal appeal, and satisfied his exhaustion requirement.

(Plaintiff's Memorandum, at 20 (all errors in original) (citing *Schermerhorn v. Local 100, Transport Workers Union of America, AFL-CIO*, 91 F.3d 316, 325 (2d Cir. 1996).) It is unclear whether the four-month period that Woods mentions above applies to LMRA claims. *See Monaco v. Smith*, No. 00 CIV. 5845 (RMB), 2004 WL 203009, at *5 n.9 (S.D.N.Y. Feb. 2, 2004) ("Courts are divided on whether the LMRDA's four-month limit should inform interpretation of the LMRA's 'unreasonable delay' provision."). But even assuming that it does apply, the time-period at most "inform[s]" this Court's "interpretation of the LMRA's 'unreasonable delay' provision." *Id.* It is not a hard-and-fast rule. And Woods cannot be heard to complain that DC's procedures took too long. Rather than seek any expedited relief in the internal process—indeed,

---

[5] The Court can consider the UBC constitution in this appeal because, although it was not attached to Woods's Complaint, he extensively quoted from it in the Complaint. *See Rodriguez v. Haynes*, 341 F. Supp. 2d 416, 418 n.4 (S.D.N.Y. 2004) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)).

The relevant portion of the UBC Constitution reads: "A member who has been found guilty of a charged violation under Section 52 may file an appeal with the General Secretary-Treasurer in accordance with the provisions of this Section. . . . All appeals received in proper form shall be referred by the General Secretary-Treasurer to an Appeals Committee for decision, subject to a final appeal to the General Executive Board; provided however, that cases involving expulsions from membership may be appealed to the General Convention." (Dkt. No. 9, Declaration of Kevin McVeigh, Ex. A, at 8–9.)

8

he did not seek any further relief at all—Woods instead chose to wait two years and bring suit here. Woods's Section 301 claim is dismissed.

### C.    Retaliation

Woods next alleges that DC's failure to provide him adequate process at the hearing constituted retaliation in violation of Section 609. But Woods has not alleged any protected action in response to which DC is supposed to have retaliated. Even assuming that the denial of the stay was sufficiently adverse to Woods to constitute retaliation, Woods has said nothing—in either his memorandum of law or his complaint—suggesting that this denial was retaliatory or indicating what action it might be in retaliation against. Instead, he says simply: "Retaliation against Plaintiff, during the disciplinary process, can be reasonably inferred, because the Trial Officer wrongfully refused to allow Plaintiff to maintain his Fifth Amendment rights, the rule applicable in carpenter court, and that chilled Plaintiff's ability to attend his hearing." (Plaintiff's Memorandum, at 17–18.) Woods's Section 609 claim is dismissed.

### D.    Unfair Labor Practices

Finally, Woods alleges that DC violated the NLRA and state law when it interfered with his employment at Pinnacle and Tutor. DC contends that this Court lacks subject matter jurisdiction over these claims because they are within the exclusive competence of the NLRA.

Under *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236, 245 (1959), "[w]hen an activity is arguably subject to [Section] 7 or [Section] 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board . . . ." *Id.* Woods alleges that DC and its officers—Woods neither names these officers nor includes them in the caption—"are liable under Section 8(a)(4)

9

of the NLRA." (¶ 142.)[6] Nonetheless, Woods argues that purely internal union matters are not

covered by the *Garmon* rule. In support of this argument, Woods cites *Int'l Ass'n of Machinists*

*v. Gonzales*, 356 U.S. 617, 621–22 (1958), which held that purely internal union matters are not

within the exclusive competence of the NLRB. First of all, that case precedes *Garmon*, and the

Supreme Court has explicitly said that "[i]t seems evident that the full-blown rationale of

*Gonzales* could not survive the rule of *Garmon*." *Amalgamated Ass'n of St., Elec. Ry. & Motor*

*Coach Employees v. Lockridge*, 403 U.S. 274, 295 (1971). Regardless, even if *Gonzales* were

still the rule, it would not apply here. In that case, the plaintiff alleged only a state-law claim.

Here, Woods *alleges* a violation of the NLRA. This claim is preempted by *Garmon* and is

therefore dismissed.

### E.   State-Law Claims

To the extent that Woods asserts state-law causes of action for breach of contract related

to this incident, the Court declines to exercise supplemental jurisdiction over them. *See In re*

*Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (per curiam) (observing that

once all federal claims are dismissed, state claims should generally be dismissed as well);

*Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all

federal-law claims are eliminated before trial, the balance of factors to be considered under the

pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point

toward declining jurisdiction over the remaining state-law claims.") Therefore, the Court need

not determine whether they are completely preempted by Section 301. And, similarly, Woods's

request to amend the NLRA cause of action to "a supplemental state contract claim, instead of a

---

[6] Section 8(a) covers unfair labor practices by *employers*. Woods presumably means to allege
that DC violated Section 8(b), which applies to labor organizations.

federal claim" (Plaintiff's Memorandum, at 23), is denied because the Court would not exercise supplemental jurisdiction over the (redundant) state cause of action.

**III.    Conclusion**

For the foregoing reasons, DC's motion to dismiss Woods's complaint is GRANTED.

The Clerk of the Court is hereby directed to close the motion at docket number 7 and to close this case.

SO ORDERED.

Dated: June 16, 2015
       New York, New York

_____
J. PAUL OETKEN
United States District Judge

11